to Gurrola v. Duncan. Thank you. If my notes are correct, that's Gurrola v. Duncan is the Andrew Ward. And then we've got Lisa Tillman, Wendy Motooka, and Louis Castoria on the other side of the case. I apologize if I mispronounced anyone's name, but you can advise me later. Mr. Ward. Good afternoon, your honors. Andrew Ward for the plaintiff appellants. I'm hoping to save three minutes for rebuttal. May it please the court. For at least three reasons, California's felony bans for EMT certification are uniquely irrational. First, the state has a separate process where it screens people for fitness for certification, including for relevant crimes. We are not challenging that screening. We are challenging that the state bans people for unrelated felonies on top of that. Second, this is just a certification. EMT certification is not a job. It is not a license. It is an educational credential showing familiarity with basic life support. And third, these bans are glaringly underinclusive. I think that would be enough to show irrationality even on a blank slate, but the slate isn't blank. Counsel, just to clarify something, am I correct that the test here is the rational basis test? It is, your honor. And under that test, courts are routinely finding that flat criminal history bans are unconstitutional. I'm sorry, counsel, what was the word you, I apologize, what was the word you said in front of criminal history bans? Flat. Okay, so I'm having a little trouble with that, so don't, in looking at the state's statutory scheme, I assume you would agree we have to look at all relevant statutes, right? I do, your honor. Okay, and Cal Penal Code, as I understand it, 1203.4 allows those who would otherwise be subject to the felony ban to go to court, except, as I understand it, for some trucking offenses and some sexual abuse offenses, maybe there are some others, and in the interest of justice and in the discretion of court, have those bans completely removed, right? Your honor, whether you can get a conviction... No, no, but my question is, did I factually state it correctly? Under the new AB2147, your honor, or under the general explanation? The general, the general. I think there's some dispute there, we haven't briefed that issue, but I think the appellees might say that that does not remove the ban and that it still needs to be reported. Well, but even if it still needs to be reported, I mean, I'll ask the appellees, but it sure looks to me like the statute says that the defendant shall be released from all penalties and disabilities resulting from the offenses of which they have been convicted, even if they still have to report them. So why don't you assume for the minute that this would remove the ban for the interest of justice and in the judge's discretion to expunge, then it isn't a flat ban, right? I think it is a flat ban, your honor, because that's a separate question. Whatever the interest of justice standard is for expungement of a conviction generally, it's still the case here that whether you have felony convictions or not, that's not rationally related to fitness for EMT certification. Well, but part of your argument is it's not rationally related because it's a flat ban. And you, I'm sure, have an argument that even if it's not a flat ban, it's still unconstitutional under the rational basis standard. But it strikes me that it isn't a flat ban. And it's not not a flat ban in the same way they can they can go to Governor Newsom. Here, they can go to go to judges, and in the interest of justice, they can get the ban taken away. So I don't see how it's a flat ban. But again, I'll ask your friends if I'm misreading the statute. Yeah, I do think it's a separate question as as to these bans. We've tweeted that they are excluding people only for unrelated crimes, because the state has separate individualized screenings. And courts regularly recognize that attenuated mechanisms like that can be irrational when another law addresses the interest directly. So Council moving to another subject, let's say the statute instead of saying two felonies had said 20 felonies, if you have 20 felonies, you can't get a certification. Would that be irrational? That's a harder question. Your Honor, I have a hard time imagining, assuming there's a plaintiff withstanding that the state would say that you can't get certified. If you have 20 felonies, while at the same time, the state was screening for individualized fitness, and grandfathering in people with 12 or 20 felony convictions. So your argument as to rational basis would be the same, whether it's two like it is here, if it were 20, or if it were 200, it would still be irrational? Perhaps not at 200, Your Honor. Again, I think with an individualized screening, if there really were grandfathering allowing people with that many felonies to practice, if the state had just passed a new law, specifically, because it's acknowledging that people with 20 felonies are trusted while they're in prison, if there weren't a ban like that for any other profession, the sorts of irrationalities we see here in this law, I think it could be irrational. So moving to the release from prison, you say the 10 years, the release from prison, you say the 10 years is irrational, right? Yes, Your Honor. What if it were 10 days? Would that be irrational? Your Honor, if the state is separately screening for any substantially related offense, I don't think you could bar people after 10 days for crime. Okay, so it would be also violating the rational basis test where the state to say, no one can apply for ENT certification within the 10 days after they've been released from prison for a felony. If the justification, Your Honor, is the fact of a felony conviction, when we have tweeted that many felonies are irrelevant, if they are going to separately screen for relevant felonies. For being in, well, it's being in jail. If, well, the fact of, there might be some other justification there, time to look into it, and the 10 days to see what was going on. But if there were a grandfathering cause saying that some people could work after 10 days, I think you do have with this many irrationalities for this particular scheme, it is irrational. And courts regularly find that these criminal history bans are unconstitutional. The Seventh Circuit, Your Honors, did that for chauffeur's licenses in Miller v. Carter. Three state Supreme Courts have done it. The Supreme Court of Mississippi for a felony ban for bail bonds agents, the Supreme Court of Washington... Have any done it in the medical context? In a medical context, I don't think so. I think the closest case is sensitive fields like child care in the Fields case, like elder care in the Nixon case. And this isn't inherently a medical context because we're just talking about a certification. It is not the job. It's not a license to go into people's homes or to drive an ambulance. And that's something we can put on evidence of, inquire into, into discovery. So this would be defensible if it defensible where it just bars them from getting a certification. Is that your position? I think it's a closer question if it barred them from working where the state is separately screening for relevant crimes. I don't think it would be rational. And even without that, it's the it's the 15 cases that have struck down bans like this insensitive fields like child care and elder care. What about any fields where they have access to narcotics? The Supreme Court of Hawaii, Your Honor, sent a case to trial on that question whether access to narcotics had a rational relationship. Just out of curiosity, did the Supreme Court of Hawaii do that percent to the United States Constitution or the Constitution of the state of Hawaii? It was a statutorily created rational basis test, Your Honor, although they do analogize it to Howard B. Doe. So it's similar to the federal test. And Your Honor, there's nothing here about access to narcotics in the complaint. That's not in the record as we have it now. The facts and hold on, we can't so you're saying we can't consider that because it's not in the complaint or we can't look at the job. I mean, can't we look at the job description? Well, again, Your Honor, we're talking about a certification that is used as we pleaded in many different kinds of jobs. Can this certification be used for a position that would not have access to narcotics? Of course, Your Honor, I believe the examples we give in the complaint are gym attendants, stadium event personnel, dispatchers who might not interact with anyone at all. The record that we have here now is that Mr. Garola's crimes are 17 and 19 years old. Mr. Herrera committed his crimes at ages 14 and 15. He was a child. They've turned their lives around. Mr. Garola passed the test. They've both been trusted by the state. And Mr. Garola goes on medical calls inside people's homes right now. I'd also like to highlight how similar Your Honor, for Your Honors, how similar the under inclusiveness point is to this court's decision in Merrifield. In that case, pest controllers were challenging a licensing scheme under the rational basis test. And the state defended it because you need to be able to pass the test. You need to be knowledgeable because of possible exposure to pesticides. But other pest controllers who are more likely to deal with pesticides, as the record evidence showed, were exempt. The people who were closer to the purported public interest weren't covered. And this court found that similar to what you have here. If vulnerable people in medical emergencies were the standard, there would be flat bans like this for trauma surgeons, for pediatricians who are alone with children. But that they don't have these flat bans. And in fact, that's not the standard in California. Almost everywhere, crimes cease to be relevant after seven years. And there is still a substantially. But they could have. I mean, the question of whether they do have the ban or whether they could have the ban or two or separate. I mean, I would think that I would have a hard time saying that if a state came in and said, we're going to ban trauma surgeons who have a felony. I'm not sure I would. That would seem to me to not be irrational. Your Honor, courts do have considered other licensing schemes in rendering these decisions. The Supreme Court of Washington did that in the Fields case, striking down a ban. Excuse me, in the child care case. Yes, Your Honor, in part because there were looser standards for fostering, which is even more exposure to children. The Fusenich case. I'm sorry, the yes, the Fusenich case did that in part because there was no flat ban for doctors and lawyers. And that was part of why it struck down a flat felony ban for private detectives and security guards. I think we have pleaded enough. I think it's clear in this circuit that plaintiffs can use facts to rebut the purported rationality of the law, as the plaintiffs did in Merrifield in Lazy Ranch. I think what we're asking for is routine to get past a motion to dismiss. I think it's routine in the law on these criminal history bans. And so I think the court should reverse for those reasons. I'm happy to answer any further questions, but I'd also like to save some time for rebuttal. Okay, well, we could stop now. And well, I'll add 30 seconds for your rebuttal so you can plan on two minutes, which I think was your initial plan. Thank you. So we'll now proceed to Ms. Tillman. And you know, this next case for defendants, we've got scheduled 13 minutes for Ms. Tillman, and only a minute each for Ms. Matuka, Mr. Castoria. And I think a minute's hardly time to smile and give a pleasantry. So I'm going to sort of arbitrarily add two minutes to Ms. Tillman. She's got 15 minutes. We'll add a minute each to Ms. Matuka and Mr. Castoria. So they'll each have two minutes. And we can now proceed with Ms. Tillman. Thank you, Your Honor. Good afternoon. My name, may it please the court, my name is Lisa Tillman. I represent Director David Duncan of the Emergency Medical Services Authority of the state of California. The appellees asked this court to affirm the district court's dismissal of appellant's constitutional challenge to the two regulations concerning the certification of emergency medical technicians. The first regulation, barring those applicants from certification if they have two or more felony convictions, and the other regulation, barring the certification of those applicants who have a recent felony-based incarceration the prior 10 years. The decision should be affirmed because emergency medical technicians have a unique role in our society. They are not only certified in basic life support, but they serve vulnerable members of our community, usually in very exigent circumstances, such that when a consumer of emergency medical technician services calls 911, calls for assistance, they don't have the option of choosing or selecting or vetting the emergency medical technician who arrives at their home or at the door of their office. They simply have to rise. And in addition, the emergency medical technicians themselves, even if they are certified by a local emergency medical services agency, they can be sent out as part of a mutual aid support to other PHLAMSAs and to other states. So it's important that all EMTs are held to the same high standard so that wherever they go, we can trust them implicitly and we can be sure that there's been no forum shopping for EMT certification. The district court properly found a rational basis, public health and safety, supported these regulations, and that the regulations were tightly tethered to the duties of an EMT. Before I proceed further, I do want to say that PHLAMSA medical directors Keppel and Falk have raised additional responses to the First Amendment complaint in this matter, and they're available, as the court has already noted, to respond to any particular questions the court has regarding those responses. But I will first turn to the equal protection claim. The district court properly found that the equal protection claim facially and as a fact is valid. Counsel, if you could address the question that I asked your friend. 1203.4, if someone gets, if I'm using the right California term, expungement under 1203.4, does that remove the disability for both of the prongs here, the two felony prong and the released within 10 year prong? It's correct that we have not briefed that matter to the court. We'd be happy to do so. My understanding is that because 1203.4, which is the kind of general expungement statute, requires that the convictions, even if they are expunged, still be disclosed in an application upon questions by, say, a licensing agency, that those expungements under remove, like Mr. Girola, from the impact of the two felony regulation or Mr. Herrera from the recent incarceration on a felony-based offense. Now, if we go to 1203.4b, that does provide an off-ramp, so to speak, for, say, Mr. Herrera. He can go to his local committing county and ask the judge to exercise their discretion in finding that, in the interest of justice, his convictions should be dismissed and expunged and need not be disclosed to a licensing agency. And maybe we will ask that the parties brief that, but let's assume you're correct. So, the two felonies, then, are, no matter what they are, are an absolute ban. The two felony convictions that we see in both Mr. Girola and Herrera? No, no, I mean, in general, two felonies, whether they're two 20-year felonies, 30-year felonies, 15-year felonies, or wobblers, it doesn't matter. Two of them and you're out. If an applicant has two or more felony convictions, then they are disqualified unless they obtain expungement under 1203.4b, the specific statute enacted by the legislature to acknowledge the work of those who have served as firefighters in the California Conservation Camp or in a So, why would it be rational that if you have for something that isn't covered by that specific statute, why would it be rational to say we are going to treat two felonies of any kind, even if they're regulatory offenses, even if the person poses no danger to the public, even if the person has no access to or never displayed anything that would in any way interfere with their ability to serve? Why would any two felonies, why is it not plausibly irrational to ban someone from this job for any two random felonies without any other means of getting the felony conviction? Every felony conviction indicates that harm has been accomplished, has been inflicted, usually on another person. That's what a felony conviction represents, whether it's a theft of money from a bank, whether it's theft of money from a person. It's a felony conviction because of a significant harm to others and also because, more broadly speaking, it shows that the convicted person is unable to conform their behavior to the expectations of society, even if it happened 30 years ago, categorically. Even if it happened 30 years ago, Your Honor, and I recognize the court's concern that over the course of time, some people may change their behavior, but the fact is they were, they exercise, to put it kindly, very poor judgment on two occasions resulting in two felony convictions, and that bright line rule is necessary to be sure that the public is protected. The legislative amendments to the Emergency Medical Services Act in 1998 and 2000 show that there is a concern about issues of abuse, however unusual, by paramedics. Why wouldn't that interest, for example, easily be served by saying that you have a category of clear bar, categorical bar offenses, and then say you said, and two felonies establish a rebuttable presumption that the person, that it would serve societal goals to allow the person to get a license, but the person can, by clear and convincing evidence, rebut that type of presumption? I mean, we're not legislators who are supposed to draft statutes, but why wouldn't something like that easily protect the government's interest without lumping every single felony in together? But the court seems to be suggesting as some sort of individualized procedural due process safeguard, and yet there's no procedural due process claim in this action. The only, the only claims are for substantive due process and for equal protection. No, I was, I was suggesting this because I thought you were arguing that no matter how long ago the convictions were, and no matter what they're for, there's a danger to society from allowing those individuals to get this certification. And that is correct, Your Honor. That, I believe, is the legislative determination that we are bound to accept as part of the rational basis test. And so the legislature has determined that the only off-ramp for those with two felony convictions is going to be through 1203.4b. Had the legislature been concerned about the impact of a two felony, of two felony convictions on the ability to obtain certification 10, 20, 30 years after, the legislature would have acted while they were amending the penal code to add this expungement statute. The legislature did not act, so we must presume that the legislature has found this statutory and regulatory scheme to be appropriate. Under the rational basis test, our job is not to second-guess the legislature, so long as there seems to be a rational basis with public health and safety. And so, let me, may I interject a question? I would just like you to elaborate, please, on what you would think are the types of harms that could befall the public if they have EMTs coming to their homes with prior felony convictions. I appreciate the court's question. Our concern is that those EMTs with two or more felony convictions may accomplish additional felonies, whether it's in the form of identity theft, because EMTs will often handle things like Medi-Cal cards, or insurance cards, or personal identification, or actual physical harm, as was indicated in the amendments in the Emergency Medical Services Act. And so, the fact that there have been repeated felony convictions means that there is a higher likelihood of such harm being inflicted in the future on members of the public, particularly when they're unable to take care of themselves. That's when people call EMTs. And so, we believe that provides the rational basis, Your Honor. Thank you. In addition to the fact that these regulations are facially valid from an equal protection viewpoint, as applied to Mr. Girola and Mr. Herrera, we do see a rational basis for these regulations. Mr. Girola spent a good part of his 20s and 30s getting involved in criminal acts towards others. He accumulated over four felony convictions during that period of time. And while he says he has turned his life around and he's now become a seasonal firefighter, the fact that he committed these crimes time and time again, even when he swore he would not do so, he was trying to turn his life around, is sufficiently concerning to the public's health and safety that there is a legitimate government interest at play in denying his application because of those felony convictions. The same is true for Mr. Herrera. He committed a felony before he went into a correctional facility. He committed another felony involving a child victim while he was in a correctional facility. That is not someone who we believe is going to uphold the high standards of an emergency medical technician, particularly in exigent circumstances where good judgment is necessary, the judgment necessary to ensure the safety of every person being served. Moving to the due process challenge, what we see in regulations is a tight fit between the duties of an emergency medical technician and the reason for these regulations having been enacted to protect the public's health and safety. Both regulations ensure that the emergency medical technician who is responsible not only for providing the basic life support, which is defined in health and safety code section 1797.60 as involving emergency first cardiopulmonary resuscitation procedures, recognizing respiratory and cardiac arrest, and starting proper application of resuscitation. But also, as I said previously, involves safeguarding people's personal property, their wallets, their identification cards, and their personal information in their medical files. The repeated felony offenses and convictions, the recent history of incarceration on a felony offense, show not only an inability to conform, but in terms of the recent incarceration, it indicates that the person is still having to show that they can conform. That 10-year period provides the applicant with an opportunity to show that they are worthy of an emergency medical technician certification. And I will say that certificate for the first time today has been described as being somehow an educational certificate. Throughout the complaint, what we see is an allegation that EMT certification is necessary to somehow become an EMT certified firefighter. However, both Garola and Herrera are currently employed in professions involving firefighting. They don't need EMT certification for those jobs. And so we would ask the court to find that this complaint is not about education. It's about a certificate that is employed by some fire departments, not all, to either employ or advance firefighters. But because Mr. Garola and Mr. Herrera are already serving in a capacity as firefighters, whether with the California Conservation Camp or as a seasonal firefighter, they have really not stated a claim under that. Ms. Tillman, I think you've gone past the two minutes you wanted for rebuttal, and I forgot to remind you. So you want to conclude? Thank you. I don't believe I reserved rebuttal. I believe I was going to. No, I'm sorry. I appreciate it, though. Yeah, you didn't reserve rebuttal. I misspoke. Go ahead and take the next one. Thank you. So in sum, what we would ask the court to do is find that both regulations are rationally related to the public interest in health and safety and to the duties of an emergency medical technician. The district court's dismissal of the Equal Protection and Due Process claims should be upheld. We thank the court for its time today. Thank you, Ms. Tillman. We'll proceed to Ms. Motooka. Good afternoon, Your Honors. May it please the court, I'm Wendy Motooka, and I represent Dr. of the Sierra Sacramento Valley EMS Agency, a public entity. Under the Monell Doctrine, a public entity can only be sued for its own policies. The SSVEMS Agency is an improper defendant in this case because it is being sued not for its own policies, but for following state law. Additionally, the SSVEMS Agency is being sued only by Plaintiff Herrera, who is an improper plaintiff in this action. Herrera's constitutional challenge has been mooted by the passage of AB 2147 in September of 2020. AB 2147 allows Mr. Herrera to petition in state superior court for expungement of his criminal convictions. If his petition is granted, his convictions will be expunged and he will no longer be affected by the regulations at issue in this case. If his petition is denied, a court would need to know why it was denied before it could begin to analyze the constitutional issues, if any. Rather than pursue the relief that state has provided, Mr. Herrera is asking this court to rush to decide a constitutional question prematurely before there is any need to decide it. The court should decline to do so based on principles of judicial restraint. For this reason, we ask that the court affirm the dismissal of Mr. Herrera. Thank you, Ms. Mota-Oko. And I apologize for mispronouncing your name earlier. Okay, Mr. Castoria. Good afternoon. I'm Louis Castoria. I represent Dr. Jeffrey Keppel, who is the Medical Director of Northern California Emergency Medical Services. And if it may please the court, I'll be very brief. Only a couple of comments I would add, and I certainly second Ms. Motoka's comments of a moment ago. In plaintiff's complaint, amended complaint, they specifically allege that Dr. Keppel had no choice to make in this instance, that he had no discretion, he had to follow the law in California, and he did. And in that circumstance, I really believe this is not a case in which he belongs as a proper defendant. If the challenge is against the law, that's one thing. But to bring it against a public servant who has, by plaintiff's appellant's admission, no discretion, I think that's something else. And the other thing I would like to say is, when Judge Bennett asked about whether a Hawaii case was based on federal or state constitutional law, it triggered something in my mind, which is the doctrine of constitutional avoidance. As a rule, we don't leap to federal constitutional issues if it's not necessary to do so. And this is a case where, instead of asking for leave to amend, or making any other challenge to the trial court's ruling other than the federal constitutional challenge we have here today, it's premature and it's simply unnecessary. And if it were necessary, these two appellants would not be the poster children for that cause. Thank you. Thank you, Mr. Kasturi. Now, I guess, Mr. Ward, we're giving you some rebuttal time. Thank you. A few quick additional answers for Judge Nelson. Narcotics are outside the scope of practice for being a basic EMT, and in any event, drug crimes are separately prohibited under subsection C8 of the enabling statute. To your question about medical jobs, health and human services jobs with unsupervised client contact, a ban there was struck down in the Cronin case. And also for people in massage parlors, so exposure to people, although, you know, quasi-medical, that ban was two felonies within the last five years. That was struck down in the Penko case. As to, I think, my friend Ms. Tillman's main points, I think that they are contrary to the allegations of the complaint. They're contrary to our pleading that this is about an educational credential that is used in many kinds of businesses, not necessarily actually as an emergency medical technician. It is contrary to our allegation that the state already has a separate mechanism to screen for related crimes. If discovery shows that there is a rational reason to be worried about theft, the state could screen for theft crimes. But counsel, am I wrong that once you get the certification, then the state's role here in terms of allowing or not allowing someone to get a job in the field, is the state done? The state, a municipal entity may or may not hire someone. That's the end of the certification process. So this is the only, the way the legislature has set up this system, this is the only step at which the state can get involved. And it is other than hiring. And as part of that point, and if those were major concerns, people wouldn't be able to volunteer as an EMT. There would be bans like this in other professions. Mr. Garova wouldn't be going on medical calls right now. The standards of the complaint of pleading are just plausibility. And we have pleaded that old crimes, fraud, things like this aren't relevant. The state is saying it can ban. I'm sorry to interject, but you're over your previously extended time. Yes, Your Honor, we'd ask the court to reverse. Okay, thank you. I want to again compliment the advocates for their excellent arguments, which are a big help to us. And also say a special thank you for appearing remotely in these somewhat stressful times for people to leave their homes. So thank you for helping us out. The case of Garova versus Duncan shall now be submitted. And the advocates will hear from the panel in due course. The court will now adjourn for the day. This court for this session stands adjourned.
judges: GOULD, BENNETT, NELSON